# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DIANA L. BRAGG,**

    **Plaintiff,**

    **vs.**                                                             **Civil Action No. 2:09 CV 65**
                                                                                         **(Maxwell)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## ORDER ADOPTING REPORT AND RECOMMENDATION

        The above-styled social security appeal was instituted on May 29, 2009, with the filing of a Complaint by the plaintiff, Diana L. Bragg. This case was referred to United States Magistrate Judge John S. Kaull in accordance with Rule 86.02 of the Local Rules of General Practice and Procedure.

        The plaintiff's Complaint is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and seeks review of a June 4, 2004, final decision of the Commissioner of Social Security ("Commissioner") finding that the plaintiff was not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act. In her June 4, 2004, Opinion, the Administrative Law Judge ("ALJ") found that the plaintiff was not disabled because she could perform the sedentary jobs identified by the vocational expert.

        On September 24, 2009, the Plaintiff's Motion for Summary Judgment and Brief in Support thereof were filed. In her Motion for Summary Judgment, the plaintiff argues that the final decision of the Commissioner is not supported by substantial evidence for two

reasons. First, the plaintiff asserts that the ALJ failed to comply with and make the findings required by Acquiescence Ruling AR 00-1(4), and, second, the plaintiff asserts that the ALJ did not make a proper Step Two Credibility Determination, eliminated evidence favorable to her, and made errors of fact.

On September 25, 2009, the plaintiff filed a Motion to Include Lost Documents and, on September 26, 2009, a Motion to Remand. In her Motion to Include Lost Documents, the plaintiff asks the Court to include in the record two pages of medical records from Webster County Memorial Hospital Clinic and an October 4, 2005, letter forwarding the same. According to the plaintiff, these records, which identify pain injections given to the plaintiff at the Webster County Memorial Hospital Clinic on March 24, 2005, April 29, 2005, and September 14, 2005, are pertinent to her argument regarding the ALJ's failure to make a proper Step Two credibility determination.

The Plaintiff's Motion to Remand asks the Court to remand her claim for determination of the onset date of disability. Specifically, the plaintiff advises the Court that, one day after the June 4, 2004, decision that is being appealed in this case, she was awarded benefits on a subsequently filed claim. The plaintiff argues that the subsequent award granting disability status constitutes new and material evidence since it was made so near in time to the date that the Commissioner previously found her not to be disabled. Attached to the Plaintiff's Motion to Remand is a copy of the Commissioner's award notice finding the plaintiff disabled commencing May 30, 2007.

The Defendant's Motion for Summary Judgment and Brief in Support thereof were filed on October 22, 2009. The defendant asserts that substantial evidence supports the ALJ's decision that the plaintiff's subjective complaints were not fully credible and that she

was not disabled in the relevant period. In response to the plaintiff's arguments, the defendant asserts that the ALJ complied fully with the requirements of Acquiescence Ruling 00-1(4); that substantial evidence supports the ALJ's credibility finding; and that the evidence submitted to the Appeals Council and to this Court by the plaintiff does not meet the requirements for remand pursuant to 42 U.S.C. § 405(g).

On July 15, 2010, Magistrate Judge Kaull entered a Report and Recommendation/Opinion ("R&R") wherein he recommended that the Defendant's Motion for Summary Judgement be granted; that the Plaintiff's Motion for Summary Judgment be denied; that the Plaintiff's Motion to Include Lost Documents be denied; and that the Plaintiff's Motion to Remand be denied. In the R&R, the parties were directed, in accordance with 28 U.S.C. § 636(b)(1), to file any written objections thereto with the Clerk of Court within fourteen (14) days after being served with a copy of the R&R. Magistrate Judge Kaull's R&R expressly provided that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

The docket in the above-styled civil action reflects that the plaintiff's Objections to Magistrate Judge Kaull's R&R were filed on July 30, 2010. In her Objections, the plaintiff objects to the Magistrate Judge's determination that, even if the ALJ failed to comply with AR 00-1(4), that error was not prejudicial. Additionally, the plaintiff objects to the Magistrate Judge's determination that the ALJ correctly assessed her credibility at Step Two of the sequential evaluation. The plaintiff also objects to the Magistrate Judge's recommendation that her Motion to Include Lost Documents and her Motion to Remand be denied. Finally, the plaintiff further objects to the Magistrate Judge's overall determination that the ALJ's decision was supported by substantial evidence.

A Response to Plaintiff's Objections to the Magistrate Judge's Report & Recommendation was filed by the defendant on August 13, 2010. The defendant asserts in his response that the ALJ did comply with Acquiescence Ruling 00-1(4); that the Magistrate Judge correctly agreed with the ALJ's credibility analysis; and that the Magistrate Judge correctly concluded that Plaintiff's Motion to Include Lost Documents and Plaintiff's Motion to Remand should be denied.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which objection is made. A failure to file objections, however, waives the party's right to *de novo* review and permits the Court to exercise review under the standards believed to be appropriate. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). This Court will, accordingly, conduct a *de novo* review only as to the specific portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error.

After reviewing Magistrate Judge Kaull's R&R; the plaintiff's Objections thereto; the defendant's Response to Plaintiff's Objections; and the entire record in this matter, this Court believes, for the following reasons, that it is appropriate to adopt the R&R.

**I.     The ALJ Complied With Acquiescence Ruling 00-1(4)**

In her Motion for Summary Judgement, the plaintiff contends that the ALJ failed to comply with and make the findings required by Acquiescence Ruling AR 00-1(4) , which is entitled "Effect of Prior Disability Findings on Adjudications of a Subsequent Disability Claim - Title II and Title XVI of the Social Security Act." AR 00-1(4) explains how the Social Security Administration applies the holding of the United States Court of Appeals for the

4

Fourth Circuit from the case of **Albright v. Commissioner**, 174 F.3d 473 (4th Cir. 1999), and outlines how the Social Security Administration will adjudicate a subsequent disability claim arising under the same or a different title of the Social Security Act as a previously adjudicated disability claim. Specifically, AR 00-1(4) provides as follows, in pertinent part:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.
>
> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, *e.g.*, a few weeks as in **Lively**. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, *e.g.*, where the relevant time period exceeds three years as in Albright. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

Magistrate Judge Kaull found that the ALJ did consider as evidence the prior ALJ's

findings at Steps One, Two and Three of the sequential evaluation process, as well as the evidence supporting those findings. (Doc. 24 at 36). Additionally, he found that substantial evidence supported the ALJ's Residual Functional Capacity determination and that her findings in this regard complied with the requirements of Acquiescence Ruling 00-1(4), as well as the Fourth Circuit Court of Appeals' holding in the *Lively* and *Albright* cases. (Doc. 24 at 38). Finally, Magistrate Judge Kaull found that, even if the ALJ had erred by failing to precisely follow Acquiescence Ruling 00-1(4), that error would be harmless since the plaintiff has failed to show any prejudice resulting from the alleged failure. (Doc. 24 at 38). This Court concurs with each of the foregoing three determinations by the Magistrate Judge with regard to the ALJ's compliance with Acquiescence Ruling 00-1(4).

As Magistrate Judge Kaull noted in his R&R, although the ALJ did not specifically mention the weight she gave to the prior ALJ's findings or mention Acquiescence Ruling 00-1(4) by title, she did make identical findings to those made by the prior ALJ at Steps One and Two of the sequential evaluation process, *i.e.*, she found that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2007, (Tr. 21) and that the plaintiff had not engaged in substantial gainful activity since June 5, 2004. (Tr. 25). At Step Three of the sequential evaluation process, the ALJ found essentially the same severe impairments that the prior ALJ had found with two omissions ("foot and heel spurs and left plantar capsulitis/metatarsalgia treated with orthotics," and "high blood pressure controlled with medication") and four additions (bilateral greater trochanteric bursitis and left acromioclavicular bursitis; right carpal tunnel syndrome; and generalized anxiety disorder). (Tr. 22). With regard to the omitted severe impairments, the ALJ indicated that the plaintiff's hypertension had been "controlled with prescribed medication" and that, for

6

this reason, this condition resulted in no significant limitations. (Tr. 22). She further indicated that the plaintiff had "failed to document any ongoing treatment by a podiatrist during the period in question for any spurs or other conditions." (Tr. 22). The ALJ expressly incorporated into her hearing decision the summary of the medical records related to the severe impairments found by the prior ALJ in his hearing decision and the prior ALJ's June 4, 2004, hearing decision itself. Thus, it is clear to the Court that the ALJ did, as she states in her hearing decision, consider both the longitudinal record and the additional evidence submitted by the plaintiff with the applications at issue in this case.

The plaintiff contends that the ALJ failed to comply with Acquiescence Ruling 00-1(4) insofar as she eliminated two of the prior ALJ's limitations from the plaintiff's Residual Functional Capacity. The Magistrate Judge found that the ALJ did consider the prior ALJ's findings regarding the plaintiff's hand and arm limitations and adequately explained her reasons for altering those limitations. This Court agrees. While the ALJ did not limit the plaintiff to the "use of the hands primarily for gross grasping strength" and to "no repetitive over head reaching" she did, in fact, impose more severe limitations than the prior ALJ had. In this regard, the ALJ added limitations that the plaintiff not be required to kneel, crawl, crouch, or climb ropes, ladders, or scaffolds; have no exposure to pulmonary irritants; and be allowed to miss one to two days of work per month due to her symptoms. (Tr. 1174). Additionally, the ALJ did address the plaintiff's hand and arm limitations in her Residual Functional Capacity determination. Specifically, she limited the plaintiff to "no constant fine manipulation" and "no overhead lifting." (Tr. 1174). The Court agrees with the Magistrate Judge that this alteration of the prior ALJ's Residual Functional Capacity is supported by substantial evidence. First, the ALJ had the benefit of a consultative examination

7

performed by Dr. Khorshad after the date of the prior ALJ decision which found that the plaintiff had full range of motion of the neck, back, and all joints; that the plaintiff had good range of motion, possibly due to a good response to her medications; that there were no sensory or reflex abnormalities; that no assistive device was used; that the plaintiff was able to get on and off the examining table; that upper and lower extremity strength was 4/5; and that fine manipulation was normal. (Tr. 29). Second, the ALJ also relied on a report from an examination by Dr. Epstein which showed that the plaintiff's neck range of motion was normal and that, although her left shoulder was tender at the AC joint, her muscle strength otherwise was 5/5 through and sensation was intact. (Tr. 29-30). Finally, the ALJ also took into account the fact that, in January of 2006, the plaintiff was evaluated for complaints of carpal tunnel syndrome symptoms that had been present "for approximately one year" and had normal neurological exam results and the fact that a February 2006, EMG showed mild to moderate right carpal tunnel syndrome. (Tr. 30).

Finally, this Court agrees with the Magistrate Judge's determination that, even if the ALJ did not precisely follow Acquiescence Ruling 00-1(4), any such error would be harmless since the plaintiff has failed to show any prejudice resulting from that alleged failure. As the Magistrate Judge found in his R&R, in the hypothetical that he posed to the vocational expert, the prior ALJ limited the plaintiff to using her hands primarily for gross grasping strength as opposed to repetitive fine manipulation and to no overhead reaching. (Tr. 1129-1130). With these limitations taken into account, the vocational expert identified the job of surveillance system monitor at the sedentary level and indicated that there were 700,000 such jobs in the national economy and at least 4,000 such jobs in West Virginia (Tr. 1130). During the February 26, 2007, hearing that is at issue in the matter now before

8

the Court, the vocational expert also identified the job of surveillance system monitor at the sedentary level as one the plaintiff could perform despite being limited to no constant overhead lifting and no constant fine manipulation. (Tr. 1175). When presented by counsel for the plaintiff with the further limitation of being able to reach only infrequently, the vocational expert maintained that the job of surveillance system monitor at the sedentary level would still be viable. (Tr. 1178). Thus, even had the ALJ imposed the exact same limitations as the prior ALJ had, the vocational expert would still have found that the plaintiff was able to perform the job of sedentary surveillance system monitor.

II. **The ALJ Correctly Determined the Plaintiff's Credibility at Step Two of the Sequential Evaluation Process**

In her May 29, 2007, Decision, the ALJ made the following credibility determination:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 28). The plaintiff asserts in her Motion for Summary Judgment that the ALJ did not make a proper credibility determination at Step Two of the sequential evaluation process; that she eliminated evidence favorable to the plaintiff; and that she made errors of fact.

In his R&R, Magistrate Judge Kaull found that the ALJ properly followed the mandate of the United States Court of Appeals for the Fourth Circuit as to the required analysis for an assessment of credibility as outlined in ***Craig v. Chater***, 76 F.3d 585 (4th Cir. 1996). In this regard, the Magistrate Judge noted that the ALJ had considered and evaluated the plaintiff's own statements regarding her pain and limitations; the laboratory

9

findings; the objective medical evidence of pain; statements, opinions, and diagnoses of the plaintiff's treating and examining physicians; plaintiff's activities of daily living; and the medical treatment and medications used by the plaintiff to alleviate pain.

In her Objections, the plaintiff alleges that the ALJ eliminated evidence favorable to her and made errors of fact in making her credibility determination. The plaintiff specifically references the following excerpt from the ALJ's decision to illustrate this objection:

> Although the claimant alleged that she had been to the hospital about one time per month during the past year to get a shot to relieve her back pain, the reports from the treating pain clinic reference only one emergency room visit, in June 2006 (Exhibit B-13F) and the claimant has documented only one other emergency room visit during the period on [*sic*] question, on November 29, 2006, when she was treated for musculoskeletal back pain secondary to overuse. The claimant complained of back pain after raking and carrying leaves (Exhibit B-16F).

(Tr. 30). The plaintiff asserts that she never testified that she went to the emergency room once a month, but that, by testifying that she usually went to the hospital about once a month, she was referring to the fact that she usually received monthly pain shots from either her treating clinic, which is located in the Webster County Memorial Hospital, or the Know Pain Clinic, or the Hope Medical Center. According to the plaintiff, the ALJ "strained to interpret Plaintiff's statement as untrue to support an unfavorable credibility ruling while omitting the favorable evidence that Plaintiff obviously had chronic pain not adequately controlled." (Doc. 25 at 3).

The Court agrees with the Magistrate Judge that the ALJ did make a proper credibility assessment in compliance with the analysis set forth by the United States Court of Appeals for the Fourth Circuit in ***Craig***. As noted by both the Magistrate Judge and the defendant in her Response to the plaintiff's objections, the plaintiff's hearing testimony

10

regarding the number of hospital visits was not the only basis upon which the ALJ discounted her credibility. A careful review of the ALJ's decision reveals that, in finding the plaintiff not entirely credible, the ALJ relied on contradictions such as the fact that, while the plaintiff testified to very limited daily activities, she told her doctors at the pain clinic that she could perform activities such as washing dishes; cleaning house, and doing some yard work when taking her medications. (Tr. 33). The ALJ also noted the contradiction between the plaintiff's testimony that she could sit comfortably for only five to ten minutes and the fact that the plaintiff did not appear uncomfortable or stand up during the hour and a half hearing. (Tr. 34). Finally, with regard to the number of times the plaintiff visited the hospital over the past year, the Court agrees with the Magistrate Judge that the evidence of record shows that, looking at the number of times the plaintiff received pain shots at any location, you find that she did so on nine occasions over a nineteen month span and only on five occasions during the year proceeding the hearing. (Doc. 24 at 42). Accordingly, it was not inappropriate for the ALJ to take into account this contradiction between the plaintiff's testimony and the record, when she also took into account: (1) the laboratory findings; (2) the objective medical evidence of pain; (3) the statements, opinions and diagnoses of the plaintiff's treating and examining physicians; (4) the plaintiff's activities of daily living; and (5) the medical treatment and medications used to alleviate pain.

**III     The Magistrate Judge Correctly Determined that the Plaintiff's Motion to Include Lost Documents Should be Denied**

As previously noted, in her Motion to Include Lost Documents, the plaintiff asks the Court to include in the record two pages of medical records from Webster County Memorial Hospital Clinic and an October 4, 2005, letter forwarding the same. According to the

11

plaintiff, these records, which identify pain injections given to the plaintiff at the Webster County Memorial Hospital Clinic on March 24, 2005, April 29, 2005, and September 14, 2005, are pertinent to her argument regarding the ALJ's failure to make a proper Step Two Credibility Determination.

The defendant opposes the Plaintiff's Motion to Include Lost Documents and asserts that 42 U.S.C. § 406(g) provides for the Commissioner to file a certified copy of the transcript of the record and does not permit the submission of documents for inclusion in the record by a motion such as the one brought by the plaintiff. Additionally, the defendant contends that, at most, the "lost documents" that the plaintiff seeks to have included in the record constitute "extra-record evidence" that fail to meet the requirements for a sixth sentence remand pursuant to 42 U.S.C. § 405(g) because they are not new and because there is no reasonable possibility that they would have changed the outcome in the case.

In his R&R, Magistrate Judge Kaull recommended that the Plaintiff's Motion to Include Lost Documents be denied. Specifically, the Magistrate Judge found that the plaintiff had made no showing of good cause for the failure to incorporate the documents in a prior proceeding and that the documents the plaintiff seeks to have included in the record were not material because they would not reasonably have changed the outcome of this case. With regard to his finding that the documents in question would not have changed the outcome of this case, Magistrate Judge Kaull noted that the dates of the three medical records sought to be admitted did not support the plaintiff's contention that she had received pain shots about once per month during the year preceding the February 26, 2007, hearing, since they reflected pain shots received in the year 2005.

This Court has already found that the ALJ made a proper credibility determination

at Step Two of the sequential evaluation process and that it was not inappropriate for the ALJ to take into account the contradiction between the plaintiff's testimony and the record with regard to the frequency of her pain injections, when she also took into account: (1) the laboratory findings; (2) the objective medical evidence of pain; (3) the statements, opinions and diagnoses of the plaintiff's treating and examining physicians; (4) the plaintiff's activities of daily living; and (5) the medical treatment and medications used to alleviate pain. Accordingly, the Court agrees with the Magistrate Judge that the medical records that the plaintiff seeks to have included in the record are immaterial, insofar as they would not have changed the outcome of this case, and that the plaintiff's Motion to Include should be denied.

## IV. The Magistrate Judge Correctly Determined that the Plaintiff's Motion to Remand Should be Denied

The Plaintiff's Motion to Remand asks the Court to remand her claim for determination of the onset date of disability. Specifically, the plaintiff advises the Court that, one day after the June 4, 2004, decision that is being appealed in this case, she was awarded benefits on a subsequently filed claim. The plaintiff argues that the subsequent award granting disability status constitutes new and material evidence since it was made so near in time to the date that the Commissioner previously found her not to be disabled.

In opposition to the Plaintiff's Motion to Remand, the defendant argues that the subsequent decision of the Commissioner's finding that the plaintiff was disabled as of May 30, 2007, is not pertinent to the relevant time period, namely, June 5, 2004, through May 29, 2007, and is not, therefore, "material" within the meaning of 42 U.S.C. § 405(g). Additionally, the defendant points out that the Commissioner's regulations specifically

provide that an application for benefits remains in effect until the date of an ALJ's decision and that the remedy for a claimant who meets the requirements for disability only after the date of the ALJ's decision is to file a new application. Finally, the defendant argues that the worsening of a condition or the development of a new impairment after the time period at issue in a claimant's case cannot be the basis for remand or an award of social security benefits.

In his R&R, Magistrate Judge Kaull recommended that the Plaintiff's Motion to Include Lost Documents be denied. Specifically, the Magistrate Judge found that the plaintiff had made no showing of good cause for the failure to incorporate the documents in a prior proceeding and that the documents the plaintiff seeks to have included in the record were not material because they would not reasonably have changed the outcome of this case. With regard to his finding that the documents in question would not have changed the outcome of this case, Magistrate Judge Kaull noted that the dates of the three medical records sought to be admitted did not support the plaintiff's contention that she had received pain shots about once per month during the year preceding the February 26, 2007, hearing, since they reflected pain shots received in the year 2005.

This Court has already found that the ALJ made a proper credibility determination at Step Two of the sequential evaluation process and that it was not inappropriate for the ALJ to take into account the contradiction between the plaintiff's testimony and the record with regard to the frequency of her pain injections, when she also took into account: (1) the laboratory findings; (2) the objective medical evidence of pain; (3) the statements, opinions and diagnoses of the plaintiff's treating and examining physicians; (4) the plaintiff's activities of daily living; and (5) the medical treatment and medications used to alleviate pain.

Accordingly, the Court agrees with the Magistrate Judge that the medical records that the plaintiff seeks to have included in the record are immaterial, insofar as they would not have changed the outcome of this case, and that the plaintiff's Motion to Include the same should not, therefore, be granted.

In his R&R, Magistrate Judge Kaull recommended that the Plaintiff's Motion to Remand be denied. This recommendation was based on the Magistrate Judge's determination that the plaintiff had not demonstrated "good cause" for the failure to submit this evidence to the Commissioner at the administrative level. In this regard, Magistrate Judge Kaull noted that the only explanation given by the plaintiff for the failure to present the Notice of Award at the administrative level was the fact that her current counsel did not represent her on her subsequent application and did not, accordingly, have notice of the award. Magistrate Kaull concluded that this was not sufficient "good cause" in light of the fact that the plaintiff herself had notice of the award since she began receiving payments in December of 2007. Additionally, Magistrate Judge Kaull pointed out that, because the plaintiff submitted nothing more to the Court than the Notice of Award, the Court had no way of determining the basis for the subsequent award.

A district court is not permitted to consider evidence that was not presented during the administrative process. ***Smith v. Chater***, 99 F.3d 635, 638 n. 5 (4th Cir. 1996)(citing ***United States v. Carlo Bianchi and Company***, 373 U.S. 709, 714-45 (1963). In the ***Smith*** case, the United States Court of Appeals for the Fourth Circuit affirmatively held that, "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." 99 F.3d at 638. A district court may, however, order a case remanded and the evidence presented to the Commissioner if a claimant shows that the evidence is new and

15

material and demonstrates good cause as to why the evidence was not incorporated in the prior proceeding. *Id*. at 638 n. 5 (citing 42 U.S.C. § 405(g)).

The Court concurs with the Magistrate Judge's determination that the plaintiff has failed to meet her burden of showing that the subsequent award constitutes new and material evidence and that there is good cause for her failure to incorporate such evidence into the record at a prior proceeding. As the Magistrate Judge correctly noted, while plaintiff's current counsel may have been unaware of the Notice of Award, the plaintiff herself certainly was not, as she began receiving disability payments in December of 2007. Furthermore, as both the Magistrate Judge and the defendant noted, the plaintiff's failure to submit anything to the Court beyond the Notice of Award provides the court with no basis for the subsequent award. Accordingly, the plaintiff has failed to provide the Court any evidence that this award is "new" or "material."

**V.     The Plaintiff's Objection to the Magistrate Judge's Overall Conclusion that the ALJ's Decision is Supported by Substantial Evidence is General and Conclusory and Merits no Further Review**

In her fifth and final objection to Magistrate Judge Kaull's R&R, the plaintiff "objects to the Magistrate Judge's overall finding that the ALJ's decision was supported by substantial evidence. R&R, pages 43-44, 46." (Doc. 25 at 4). As recognized by the defendant in his Response to the plaintiff's Objections, the plaintiff provides no explanation in support of this objection. The United States Court of Appeals for the Fourth Circuit has recognized that objections to a Report and Recommendation must be specific in order to receive review by the district court. In this regard, the Fourth Circuit Court noted as follows:

16

> Courts have also held *de novo* review to be unnecessary in analogous situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations. *See, e.g.*, **United States v. Mertz**, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); **Pendleton v. Rumsfeld**, 628 F.2d 102 (D.C. Cir. 1980).

**Orpiano v. Johnson**, 687 F.2d 44, 47 (1982). Because the plaintiff's fourth objection is general and conclusory and does not direct the Court to a specific error in Magistrate Judge Kaull's R&R, this Court finds that it merits no further review.

For all of the foregoing reasons, it is

**ORDERED** that Magistrate Judge Kaull's July 15, 2010, Report And Recommendation/Opinion (Doc. 24) be, and is hereby, **ACCEPTED** and that this civil action be disposed of in accordance with the recommendation of the Magistrate Judge. Accordingly, it is

**ORDERED** that:

1. The Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**;

2. The Plaintiff's Motion for Summary Judgment (Doc. 14) is **DENIED**;

3. The Plaintiff's Motion to Include Lost Documents (Doc. 15) is **DENIED**;

4. The Plaintiff's Motion to Remand (Doc. 17) is **DENIED**;

5. The decision of the Administrative Law Judge is **AFFIRMED**; and

6. The above-styled civil action is **DISMISSED** and **RETIRED** from the docket of this Court.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Clerk of Court is directed to enter a separate Judgment Order affirming the decision of the ALJ.

The Clerk of Court is directed to transmit copies of this Order and the Judgment Order

to counsel of record.

**DATED**: September 3, 2010.

JOHN PRESTON BAILEY  
UNITED STATES DISTRICT JUDGE